LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
MARIA F. GARCIA BALDIZZONE, Esq. SBN 367907
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Attorneys for Plaintiff
Maria.garcia@carrillofirm.com
mgteam@carrillofirm.com

Electronically FILED by Superior Court of California, County of Los Angeles 6/30/2026 2:39 PM David W. Slayton, Executive Officer/Clerk of Court, By Y. Ayala, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

ANDREA VELEZ, an individual.

Plaintiff,

v.

CITY OF LOS ANGELES, and DOES 1-20.

Defendants.

**Case No.:** 26STCV20770

**COMPLAINT FOR DAMAGES**

1. **FIRST CLAIM FOR RELIEF--FALSE ARREST/ FALSE IMPRISONMENT BY DOES 1-20**
2. **SECOND CLAIM FOR RELIEF –NEGLIGENCE**
3. **THIRD CLAIM FOR RELIEF--FOURTH AMENDMENT VIOLATION--UNLAWFUL SEIZURE BY DOES 1-20**
4. **FOURTH CLAIM FOR RELIEF --FIFTH AMENDMENT VIOLATION --DENIAL OF LIBERTY WITHOUT DUE PROCESS OF LAW BY DOES 1-20**
5. **FIFTH CLAIM FOR RELIEF--VIOLATIONS OF THE BANE ACT (CAL. CIVIL CODE § 52.1) BY DOES 1-20**
6. **SIXTH CLAIM FOR RELIEF--VIOLATION OF EQUAL PROTECTION OF SECTION 1 OF THE FOURTEENTH AMENDMENT**

**DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff **ANDREA VELEZ**, ("Plaintiff"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to California Code of Civil Procedure section 410.10 et seq. This Court has jurisdiction over Plaintiff's civil rights claims pursuant to 42 U.S.C. § 1983, which may be heard in state court.

2. Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure section 395 because all events giving rise to this action occurred within the County of Los Angeles.

3. Plaintiff timely presented a Government Tort Claim against Defendant CITY OF LOS ANGELES on December 1, 2025, pursuant to California Government Code sections 900 et seq. More than forty-five (45) days have elapsed since presentation of that claim without rejection or action, and Plaintiff has satisfied all prerequisites to the filing of this action.

**INTRODUCTION**

4. This is a civil rights action/tort action arising out of the unlawful detention, assault and battery, false imprisonment, committed by LAPD Officers against ANDREA VELEZ, on June 24, 2025. LAPD Officers, DOES 1-20, actively assisted ICE and/or Border Patrol agents on June 24, 2025. ANDREA VELEZ is a United States citizen born and raised in Los Angeles. This civil rights action is filed against the City of Los Angeles, and against Los Angeles Police Department officers and supervisors, DOES 1-20.

5. This civil rights and tort action arises out of the unlawful actions of LAPD personnel in the Violation of **City of Los Angeles Ordinance Number 188441** by Los Angeles Police Officers, DOES 1-20, on June 24, 2025. The City Ordinance Number 188441 prohibits the use of LAPD personnel for immigration enforcement purposes; and prohibits City of Los Angeles personnel to be used for activities related to Federal immigration enforcement.

6. On June 24, 2025 LAPD Officers and LAPD Supervisors DOES 1-20 aided and abetted Federal immigration agents in unlawfully seizing ANDREA VELEZ without probable cause and without any legal basis for doing so. The LAPD officers and supervisors physically aided and abetted those immigration agents to arrest ANDREA VELEZ ***after*** ICE/Bord Patrol

agent C.G. forcefully pushed VELEZ to the concrete ground.

7. This civil rights and tort action also arises from the **Violation of Section 19.191 of the Los Angeles Administrative Code (LAAC)** by Los Angeles Police Officers, DOES 1-20, on June 24, 2025. The Los Angeles Administrative Code (LAAC) prohibits City of Los Angeles personnel to detain, hold, and/or assist Federal agents, for the purposes of immigration enforcement. This Administrative Code was violated by LAPD agents when they detain, held and assisted agents in the unlawful detention of ANDREA VELEZ.

**PARTIES**

8. At all times relevant, Plaintiff ANDREA VELEZ (Hereinafter “Plaintiff” or “VELEZ”), a U.S. citizen, was an individual residing in the City of Los Angeles.

9. Defendant CITY OF LOS ANGELES (“CITY”) is a public entity organized and existing under the laws of the State of California. Defendant CITY is responsible for the acts and omissions of DOES 1-20 and its employees, agents, and representatives, including officers and supervisors of the Los Angeles Police Department “(LAPD”), acting within the course and scope of their employment. The Defendant CITY is also responsible for its policies, practices, customs, and training relating to the conduct of LAPD Officers in connection with Federal immigration enforcement activities.

10. The true names and capacities of Defendants sued herein as DOES 1-20, inclusive (“DOE DEFENDANTS”), are presently unknown to Plaintiff. Plaintiff alleges on information and belief that each DOE DEFENDANT is an employee, agent, or representative of the CITY and was acting within the course and scope of such employment at all times relevant herein.

11. Plaintiff is informed and believes, and thereon alleges, that DOES 1-10 were LAPD officers who were present at the scene on June 24, 2025. DOES 1-10 participated in, facilitated, assisted, encouraged, aided, abetted, authorized, and/or failed to intervene to prevent the unlawful seizure and detention of Plaintiff VELEZ by Federal immigration agents. Plaintiff further alleges that DOES 1- 10 gave commands, directions, or other assistance that facilitated Plaintiff's detention by Federal immigration agents.

///

12. Plaintiff is informed and believes, and thereon alleges, that DOES 11 through 20 were supervisory personnel, commanding officers, policymakers, training officials, and/or other supervisory employees within the Los Angeles Police Department and/or the CITY OF LOS ANGELES. DOES 11 through 20 were present during, authorized, approved, ratified, directed, supervised, acquiesced in, and/or failed to prevent the conduct of DOES 1-10 alleged herein, despite having the authority and opportunity to do so.

13. Plaintiff is further informed and believes, and thereon alleges, that DOES 11 through 20 were responsible for the creation, implementation, supervision, enforcement, and/or oversight of policies, customs, practices, training, and supervision within the LAPD and the CITY OF LOS ANGELES, and that their acts, omissions, policies, training decisions, failures to train, failures to supervise, and/or ratification of subordinate conduct were a substantial factor in causing the violations and injuries alleged herein. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE DEFENDANTS when ascertained. At all times mentioned herein, each Defendant was the agent, servant, employee, or co-participant of each other Defendant.

## FACTUAL ALLEGATIONS

14. Plaintiff ANDREA VELEZ is a thirty-two-year-old United States citizen, born and raised in downtown Los Angeles. She is a graduate of California State Polytechnic University, Pomona (Cal Poly Pomona), and was employed as a production coordinator in Los Angeles, California, at the time of the incident.

15. On June 24, 2025, at approximately 9:00 a.m., VELEZ was dropped off near her workplace in Los Angeles by her mother and her 17-year-old sister, just as she was each morning.

16. Upon exiting her family's vehicle, VELEZ, unbeknownst to her and other members of the public, stepped directly into a coordinated, planned, and executed Federal operation that was an unlawful, arbitrary, "round-up" of people based on racial profiling, that was designed to instill fear and terror within the Latino community. Federal immigration agents, ICE Deportation Officers C.G. and Carey Crook, along with other unidentified Federal agents, exited unmarked sport utility vehicles and began pursuing Latino individuals in the area without any

basis to stop them or detain them. Upon information and belief, the Federal agents were targeting and detaining individuals based, in whole or in part, on their perceived ethnicity, appearance, and/or use of the Spanish language. The Federal agents relied on racial profiling and the Federal agents did not rely on arrest warrants. The Federal agents were dressed in plain clothes and wore masks and sunglasses, making it very difficult for members of the public to identify them as law enforcement officers.

17. As the federal agents exited their vehicles on June 24, 2025 and started unlawfully chasing people without any legal basis for doing so, ICE Agent C.G. ran full speed toward VELEZ and forcefully pushed and slammed Plaintiff VELEZ to the concrete ground. At the time, VELEZ was approximately 4 feet 11 inches tall and weighed approximately 125 pounds, while Agent C.G. was significantly larger in stature, standing over six feet tall. Ms. VELEZ had committed no crime, had no interaction with any ICE agent prior to being pushed, and was not attempting to flee. The brutal "slamming" of Ms. VELEZ to the ground was witnessed by multiple bystanders observing from the eighth floor of a building directly above the intersection of 9th Street and Main Street.

18. As a result of the force used against her, VELEZ suffered physical injury, pain, emotional distress, and other damages. VELEZ's mother and 17-year-old sister, watching from inside their vehicle, witnessed the attack on VELEZ and immediately called 911. They reported to the LAPD dispatcher that their daughter and sister was being violently attacked and possibly kidnapped by masked, unidentified men. LAPD officers and supervisors. DOES 1-20 responded to the 911 call and arrived at the scene but instead of helping VELEZ, or investigating the kidnapping of VELEZ, DOES 1-20 immediately began to assist, and facilitate the unlawful detention and seizure of VELEZ by the Federal agents.

19. Fearing that she was being attacked or kidnapped by unidentified individuals who provided no reason or basis for her detention, VELEZ, fearing for her life, ran to nearby LAPD officers and supervisors, DOES 1-20, seeking protection and assistance. VELEZ informed the LAPD officers that unknown individuals were attempting to seize her and pleaded for help. VELEZ stated: "I don't know who these people are, they are trying to kidnap me." VELEZ

believed she was being kidnapped and trusted that uniformed LAPD officers would protect her. Rather than investigating VELEZ's report of a kidnapping, a felony in progress reported via 911, the LAPD officers and supervisors failed to take any protective or investigative action. Instead, an LAPD supervisor ordered VELEZ to “stand there” and to “turn around,” physically repositioning her to face the ICE agents who were unlawfully detaining her.

20. DOES 1-20, were in uniform, with badges visible, with police equipment, including guns. DOES 1-20, were personally observing the kidnapping of Plaintiff VELEZ by the ICE agents. DOES 1-20 actively participated with the ICE agents’ kidnapping of Plaintiff VELEZ by establishing a perimeter, blocking both vehicular and pedstrian traffic, and discouraging others from aiding Plaintiff VELEZ, and by sanctioning the unlawful conduct by ICE and Federal agents.

21. The LAPD Officers and Supervisors, DOES 1-20, also provided material and strategic support to the ICE and Federal agents by “cordoning off” the area where the ICE and Federal agents were handcuffing Plaintiff VELEZ; and by enclosing, isolating, and restricing access to VELEZ so that the ICE and Federal agents would more easily handcuff VELEZ; and to provide distance from the mother and sister of VELEZ who were nearby.

22. Pursuant to the LAPD supervisor's commands, VELEZ stopped resisting and turned to face the ICE agents. ICE agent Carey Crook then bear-hugged VELEZ from behind, lifted her entirely off the ground, and handcuffed her. VELEZ's legs were flailing as she was lifted off the ground. The LAPD Officers and Supervisors, DOES 1-20, present at the scene stood by and permitted ICE agent Carey Crook to “bear-hug” VELEZ from behind, lifting her entirely off the ground, without intervening, even after the mother and sister called 911 to report the “kidnapping” of VELEZ.

23. ICE agent Carey Crook physically carried VELEZ away from the LAPD officers and toward an unmarked vehicle with no license plate. The LAPD officers and supervisors present at the scene did nothing to intervene or protect VELEZ. This entire sequence was captured on video.

24. Multiple eyewitnesses, observing from the eighth floor of the adjacent building, confirmed that: (a) VELEZ did not resist or assault any agent at any time; (b) no agent chased

VELEZ prior to the encounter; (c) VELEZ was carried away from LAPD officers without any struggle; and (d) VELEZ was targeted because of her appearance and ethnicity.

25. VELEZ's mother and sister observed the encounter from inside their vehicle, and VELEZ's sister called out from the car: “She's my sister. She's a U.S. Citizen. Please, someone.” None of the LAPD officers, nor any LAPD Supervisor, intervened to protect VELEZ.

26. VELEZ was transported by ICE agent Carey Crook in an unmarked vehicle. Throughout her transport and detention, VELEZ repeatedly stated that she was a United States citizen. Nonetheless, ICE agents addressed her only in Spanish. VELEZ's bag and iPhone were also seized.

27. VELEZ was detained for over 48 hours and she was held incommunicado for over 24 hours. Neither her family nor her attorney could locate her. While in custody VELEZ was changed into a white jumpsuit, given a tuberculosis shot, and held at the Metropolitan Detention Center in downtown Los Angeles.

28. The conduct of LAPD Officers and Supervisors, DOES 1–20, went far beyond facilitating a brief, consensual, or investigatory stop. When VELEZ fled to DOES 1–10 for protection, the LAPD officers and supervisors did not ask her a single question, did not give her an opportunity to identify herself or produce identification, and did not permit her to go on her way. Rather than conduct even a momentary investigation of the kidnapping that VELEZ’s family reported, the uniformed LAPD Officers and Supervisors, DOES 1-20, took affirmative control of VELEZ and of the scene: they ordered her to “stand there” and to “turn around.” DOES 1-20 physically repositioned VELEZ’s body to face the Federal agents who had slammed her to the concrete ground and were unlawfully seizing her. DOES 1-20 also established and held a perimeter that cordoned off the area and blocked vehicular and pedestrian traffic. Moreover, DOES 1-20 isolated VELEZ from her mother, her sister, and other bystanders who might have come to her aid. DOES 1-20, thereby cleared the way for the Federal agents to handcuff VELEZ and to unlawfully take VELEZ into custody without any legal basis.

29. At all relevant times, LAPD Officers and Supervisors, DOES 1-20, were acting under color of state law and within the course and scope of their employment with the City of Los

Angeles. The actions of DOES 1-20 in assisting Federal immigration agents were undertaken despite City policies and ordinances limiting the use of City resources and personnel for immigration enforcement activities.

30. Plaintiff is informed and believes, and thereon alleges, that LAPD officers and supervisors, DOES 1–20, did not confine their unlawful assistance to the street-level seizure of VELEZ. At and around the Metropolitan Detention Center where VELEZ was held, LAPD personnel further assisted Federal immigration authorities by establishing and maintaining a perimeter around the Metropolitan Detention Center facility, restricting and controlling public access to the facility, and discouraging, impeding, and obstructing oversight by members of the public and by federal, state, and local elected officials who sought to monitor conditions at the facility and confirm the welfare and location of detainees, including VELEZ. The use of CITY personnel, authority, and resources to insulate a Federal immigration detention operation from public and governmental oversight constituted further participation in, and facilitation of, Federal immigration enforcement by City of Los Angeles police Officers and Supervisors, DOES 1-20.

31. On June 26, 2025, a Federal judge ordered VELEZ's release upon payment of a bond of $5,500. On July 10, 2025, the criminal complaint against VELEZ was dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a). The charges filed by the Federal authorities, that VELEZ had assaulted a federal officer, were without factual or legal basis. ICE agents lacked reasonable suspicion or probable cause to believe VELEZ had violated any law. Furthermore, the probable cause declaration submitted was utterly false and is confirmed by the video and other percipient witnesses present on scene.

32. As a direct and proximate result of Defendants' conduct, including their participation in, facilitation of, and failure to prevent the unlawful seizure and detention of VELEZ, she sustained two large bruises on her right arm extending from her shoulder to her wrist, soreness throughout her body, physical pain, emotional distress, and other damages according to proof at trial.

33. VELEZ has been unable to return to her workplace in person since the incident. She continues to work remotely due to fear of being unlawfully targeted and detained again by

ICE agents and/or LAPD officers aiding and abetting them. She has sought and obtained therapy for ongoing trauma, anxiety, and fear. VELEZ suffered, and continues to suffer, severe emotional distress, psychological trauma, humiliation, loss of liberty, fear, and mental anguish as a direct and proximate result of the conduct of DOES 1-20 and the Federal agents' conduct.

34. Since 1979, LAPD has maintained Special Order 40, which prohibits LAPD officers from initiating police action with the objective of discovering the immigration status of any person, and from making any inquiry for the purpose of determining immigration status. Special Order 40 was designed to protect all Los Angeles residents from unlawful immigration enforcement actions by LAPD officers.

35. Los Angeles Administrative Code section 19.191 (formerly Special Order 40, as codified) prohibits the CITY and LAPD officers from: (a) making any person available to federal immigration agents for purposes of immigration enforcement; (b) participating in any operation involving federal immigration agents; (c) cooperating with federal immigration agents in the arrest of any person; and (d) using CITY personnel, authority, or resources to facilitate federal immigration enforcement actions.

36. Additionally, at the time of the incident, June 24, 2025, **Los Angeles Administrative Code section 19.191**, enacted through **City of Los Angeles Ordinance No. 188441**, prohibited the use of City resources, personnel, property, and funds for immigration enforcement except as expressly authorized by law. Notwithstanding these restrictions, LAPD officers and supervisors, DOES 1-20, actively participated in, assisted, and facilitated the unlawful detention and seizure of VELEZ by the Federal agents.

37. **There was also a Violation of Section 19.191 of the Los Angeles Administrative Code ("LAAC") by Los Angeles Police Officers, DOES 1-20**, on June 24, 2025. The Los Angeles Administrative Code prohibits City of Los Angeles personnel to detain, hold, and/or assist Federal agents, for the purposes of immigration enforcement. On June 24, 2025, DOES 1-20 violated **Special Order 40**; and violated **Los Angeles Administrative Code Section 19.191,** the California Constitution, and California state statutes; such as SB 54, the

California Values Act.[1]

38. LAPD Officers and Supervisors, DOES 1-20, present at the scene on June 24, 2025, violated Special Order 40 and violated LAAC section 19.191 by: (a) participating in the Federal immigration enforcement operation conducted by ICE agents at 9th and Main Street; (b) and by making VELEZ available to Federal immigration agents by ordering her to "stand there" and "turn around"; (c) cooperating with Federal immigration agents in the unlawful arrest of VELEZ, a United States citizen; (d) using their authority, presence, and commands to facilitate the seizure and removal of VELEZ by ICE agents, (e) and by providing strategic support to the ICE and Federal agents support to the ICE and Federal agents by "cordoning off" the area where the ICE and Federal agents were handcuffing Plaintiff VELEZ; (f) by enclosing, isolating, and restricing access to VELEZ so that the ICE and Federal agents would more easily handcuff VELEZ; and (g) by assisting federal agents by protecting MDC from those who sought accountability of ICE agents' activities.

39. The CITY failed to properly train LAPD officers and supervisors regarding their legal obligations under Special Order 40 and LAAC section 19.191. The CITY further failed to discipline, supervise, or hold accountable any officer who violated these prohibitions, fostering a culture of ratification of unconstitutional Federal immigration enforcement cooperation.

40. The CITY's Chief of Police, Commanders, and high-ranking supervisors have ratified, condoned, and acquiesced in the LAPD officers' violations of the CITY's immigration enforcement prohibitions, including LAPD officers' unlawful cooperation with federal immigration agents and their use of CITY personnel, authority, and resources to facilitate immigration enforcement actions.

41. Upon information and belief, the CITY, through the LAPD, was aware of ongoing

---

[1] Senate Bill 54, known as the California Values Act, was enacted in 2017 to limit the use of California state and local law enforcement resources for federal immigration enforcement activities. The Act generally prohibits state and local law enforcement agencies from investigating, interrogating, detaining, detecting, or arresting individuals for immigration enforcement purposes and restricts cooperation with federal immigration authorities except in limited circumstances prescribed by statute. *See* Cal. Gov't Code §§ 7284–7284.12; California Senate Bill No. 54 (2017–2018 Reg. Sess.)

publicconcerns, complaints, and allegations regarding LAPD officers assisting, facilitating, coordinating with, or otherwise supporting federal immigration enforcement operations conducted by ICE and related federal agencies within the City of Los Angeles. Community organizations, immigrant rights advocates, and members of the public appeared before the Los Angeles Board of Police Commissioners to report and discuss incidents in which LAPD officers were present during immigration enforcement activities, assisted with crowd control or perimeter security during Federal operations, or otherwise acted in a manner perceived by community members as supporting ICE enforcement efforts despite the City's policies and public representations limiting cooperation with Federal immigration authorities. These concerns were publicly presented to City policymakers and LAPD leadership, thereby placing the City of Los Angeles officials on notice of the conduct of LAPD Officers cooperating with Federal immigration enforcement; the risk of constitutional violations, and the resulting harm and fear experienced by immigrant communities within Los Angeles. Despite such notice, the City of Los Angeles and the LAPD failed to adequately supervise, train, investigate, discipline, or otherwise prevent LAPD personnel from engaging in conduct that assisted or facilitated Federal immigration enforcement activities in violation of Plaintiffs' constitutional rights.[2]

**FIRST CLAIM FOR RELIEF**

**False Arrest/False Imprisonment**

(By Plaintiff against all Defendants, the CITY and DOES 1-20)

42. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

43. Defendants, DOES 1-20, LAPD officers and supervisors acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement when Defendants DOES 1-20, assisted Federal agents to deprive Plaintiff of her liberty, DOES 1-20, assisted the Federal agents in arresting Plaintiff; and assisted Federal agents in the false

---

[2] Christopher Damien, *After a Canceled Presentation, Immigrant Rights Advocates Finally Get Their Day Before the Police Commission. Here's What They Had to Say*, The LA Local (May 13, 2026)

imprisonment of Plaintiff.

44. Defendants DOES 1-20 aided and abetted Federal agents in the false arrest of Plaintiff by, among other things, ordering Plaintiff to “stand there” and “turn around,” thereby restraining Plaintiff’s freedom of movement, and positioning Plaintiff to be physically seized by ICE agents. DOES 1-20 permitted and facilitated the bear-hugging, lifting, handcuffing, and removal of Plaintiff from the scene by the ICE agents; and DOES 1-20 did nothing to prevent Plaintiff's unlawful arrest and subsequent detention of over 48 hours. Plaintiff did not voluntarily consent to her false arrest.

45. Defendants DOES 1-20 lacked any lawful authority to detain Plaintiff; and lacked any lawful authority to assist, aid, and to help Federal agents to arrest Plaintiff. Plaintiff had committed no crime and was not reasonably suspected of any criminal activity. Plaintiff was ultimately released on the order of a Federal judge, and the criminal charges against her were dismissed. The conduct of Defendants DOES 1-20 was a substantial factor in causing harm to Plaintiff.

46. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages in an amount to be proven at trial.

47. The conduct of all Defendants was willful, wanton, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages against the individual LAPD Officers and Supervisor defendants, Does 1-20. Plaintiff seeks compensatory damages, punitive damages against the individual LAPD Officers and Supervisors, and such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**Nelgigence**

(By Plaintiff against all Defendants, the CITY and DOES 1-20)

48. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

49. At all relevant times, Defendants CITY OF LOS ANGELES and DOES 1 through

20 owed Plaintiff a duty to exercise reasonable care in the performance of their law enforcement duties and to comply with applicable laws, ordinances, policies, and procedures governing interactions with federal immigration authorities. Does 1-20 negligently did not comply with standard police practices and standards.

50. California Government Code section 815.2 mandates that government entity may be vicariously liable for the actions of public employees. In this case the Defendant CITY OF LOS ANGELES is vicariously liable for the injuries caused by Defendants DOES 1-20 who unlawfully helped Federal agents in the false arrest of Plaintiff by, among other things, ordering Plaintiff to "stand there" and "turn around," thereby restraining Plaintiff's freedom of movement, and positioning Plaintiff to be physically seized by ICE agents. Moreover, DOES 1-20 permitted and facilitated the bear-hugging, lifting, handcuffing, and removal of Plaintiff from the scene by the ICE agents. DOES 1-20 did nothing to prevent Plaintiff's unlawful arrest and subsequent detention of over 48 hours in violation of the City of Los Angeles Special Order 40, Los Angeles Ordinance No. 188441, and LAAC Ordinance § 19.191.

51. At all relevant times, Special Order 40[3], Los Angeles Ordinance No. 188441[4], and Los Angeles Administrative Code section 19.191[5] prohibited and restricted the use of City personnel and resources for immigration enforcement purposes except as expressly authorized

---

[3] LAPD Special Order No. 40, issued November 27, 1979, provides that LAPD officers "shall not initiate police action with the objective of discovering the alien status of a person" and shall not arrest or book individuals solely for violations of federal immigration laws. The purpose of the Order is to ensure that all residents, regardless of immigration status, may seek police assistance without fear that contact with LAPD will result in immigration enforcement. *See* LAPD Special Order No. 40, "Undocumented Aliens" (Nov. 27, 1979).

[4] On December 19, 2024, the City of Los Angeles enacted Ordinance No. 188441, commonly referred to as the City's "Sanctuary City" ordinance, which added Chapter 19 to Division 19 of the Los Angeles Administrative Code. The Ordinance prohibits the use of City resources, personnel, property, and data for federal immigration enforcement except where required by federal or state law. *See* Los Angeles Ordinance No. 188441 (Dec. 19, 2024).

[5] Los Angeles Administrative Code section 19.191 provides that, unless required by federal or state law, no City resources, including City personnel and City property, shall be utilized to investigate, cite, arrest, hold, transfer, detain, assist in the detention of, or otherwise participate in federal immigration enforcement activities. See Los Angeles Administrative Code § 19.191, "Prohibition on the Use of City Resources."

by law. These provisions were enacted, in part, to protect residents of the City of Los Angeles from unlawful detention, seizure, and immigration enforcement activities facilitated by City personnel.

52. On June 24, 2025, LAPD officers and supervisors, including DOES 1 through 20, responded to a 911 call reporting a kidnapping involving Plaintiff VELEZ. Upon arriving at the scene, Plaintiff identified herself as the citizen for whom assistance had been requested, informed officers that she was a U. S. citizen, and sought protection and assistance from the responding officers. DOES 1-20.

53. Rather than investigating the reported kidnapping or protecting Plaintiff, Defendants CITY OF LOS ANGELES and DOES 1 through 20, breached their duties of reasonable care by, among other things, failing to conduct an adequate investigation; failing to assess the legality of the federal agents' conduct; failing to verify Plaintiff's claims of United States citizenship; failing to follow accepted police practices and standards governing citizen contacts, detention investigations, and responses to reports of criminal activity; assisting, facilitating, encouraging, coordinating with, and lending the authority of the LAPD to federal immigration agents; directing Plaintiff to comply with federal agents; restricting Plaintiff's freedom of movement; and otherwise using their official authority and presence to aid in Plaintiff's detention and seizure.

54. In breaching their duties, DOES 1–20 also failed to act in accordance with generally accepted law enforcement standards, training, and practices. A reasonable, properly trained peace officer who responds to a 911 report of a kidnapping in progress would investigate the report, ascertain the identity and authority of the individuals seizing the reported victim, give weight to the victim's repeated statements that she is a United States citizen, and take reasonable steps to protect her. Instead, DOES 1–20 disregarded these basic and accepted police practices and standards, abdicated their protective duties, and affirmatively assisted in VELEZ's seizure. Their acts and omissions fell below the standard of care required of peace officers under the same or similar circumstances.

///

55. Defendants' conduct further violated Special Order 40, Los Angeles Ordinance No. 188441, and LosAngeles Administrative Code section 19.191. Pursuant to Evidence Code section 669, these violations constitute negligence per se because the ordinances and policies were designed to prevent the type of harm suffered by Plaintiff, and Plaintiff was among the class of persons those provisions were intended to protect.

56. The acts and omissions of Defendants CITY OF LOS ANGELES and DOES 1 through 20 were a substantial factor in causing Plaintiff's unlawful detention, loss of liberty, physical injuries, emotional distress, humiliation, and other damages.

57. Pursuant to Government Code section 815.2(a), Defendant CITY OF LOS ANGELES is vicariously liable for the negligent acts and omissions of DOES 1 through 20 committed within the course and scope of their employment. The negligent acts and omissions of DOES 1 through 20 were a substantial factor in causing Plaintiff's unlawful detention, loss of liberty, physical injuries, emotional distress, humiliation, and other damages.

58. As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiff suffered physical injury, pain, emotional distress, loss of liberty, economic losses, and other damages in an amount according to proof at trial.

## THIRD CLAIM FOR RELIEF

**Fourth Amendment Violation -- Unlawful Seizure by Does 1-20**

(By Plaintiff against all Defendants, the CITY and DOES 1-20)

59. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action. Defendants DOES 1-20, acting under color of state law, deprived Plaintiff of rights secured by the Fourth Amendment to the United States Constitution, including the right to be free from unreasonable seizures and arrests.

60. Defendants DOES 1-20 seized Plaintiff within the meaning of the Fourth Amendment by taking a very active role in the unlawful seizure of VELEZ: (a) ordering her to “stand there” and “turn around,” thereby restraining her freedom of movement and positioning her for physical seizure by ICE agents; (b) by providing strategic support to the ICE and Federal agents by “cordoning off” the area where the ICE and Federal agents were handcuffing Plaintiff

VELEZ; (c) and by enclosing, isolating, and restricing access to VELEZ so that the ICE and Federal agents would more easily handcuff VELEZ and the mother and sister would not have access to Pliaintiff VELEZ. The unlawful conduct of DOES 1-20, constituted an integral participation in the unlawful seizure of VELEZ.

61. At all relevant times, LAPD Officers and Supervisors, DOES 1-20, lacked a reasonable suspicion or probable cause to detain, seize, arrest, or otherwise restrain Plaintiff VELEZ. Plaintiff was lawfully present in a public place, was not committing a crime, was walking to her place of employment, and was not engaged in conduct that would justify her detention or seizure.

62. Notwithstanding the absence of reasonable suspicion or probable cause, LAPD Officers and Supervisors DOES 1-20, participated in, facilitated, assisted, encouraged, authorized, ratified and/or failed to intervene to prevent the seizure and unlawful detention of Plaintiff. By assisting in and facilitating Plaintiff's unlawful detention and restraint, the LAPD officers caused and/or were substantial factors in causing Plaintiff to be unlawfully seized in violation of the Fourth Amendment to the United States Constitution.

63. DOES 1–20 affirmatively seized and caused the seizure of VELEZ by, among other things:

(a) issuing direct and authoritative commands ordering VELEZ to remain where she was, to stop moving, to “stand there,” and to “turn around,” thereby restricting her freedom of movement and demonstrating that she was not free to leave; (b) physically directing, positioning, and controlling VELEZ's movements so that federal agents could detain and handcuff her; (c) creating, maintaining, and enforcing a police perimeter around VELEZ, blocking vehicular and pedestrian access, preventing her mother, sister, and other bystanders from reaching or assisting her, and ensuring that she remained isolated and under law enforcement control; (d) coordinating and acting jointly with federal agents throughout the encounter; and (e) providing physical, tactical, and strategic assistance that enabled federal agents to restrain, bear-hug, lift, handcuff, transport, and remove VELEZ from the scene. Without the active assistance, coordination, and participation of DOES 1–20, the seizure of VELEZ could not have been accomplished in the

manner in which it occurred. Each Defendant was therefore an integral participant in, and a substantial factor causing, the unlawful seizure. The conduct of LAPD Officers and Supervisors DOES 1-20, was objectively unreasonable under the circumstances and deprived Plaintiff of her right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

64. As a direct and proximate result of Defendants' violations of the Fourth Amendment, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages in an amount to be proven at trial. Defendants' Does 1-20 conduct was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's clearly established constitutional rights, entitling Plaintiff to punitive damages. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees pursuant to costs, and such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Municipal Liability (*Monell*) – Unconstitutional Custom, Practice and/or Policy

(By Plaintiff against Defendant, CITY)

65. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

66. The constitutional violations suffered by Plaintiff were the direct result of one or more of the following policies, practices, customs, and failures:

67. Prior to June 24, 2025, CITY, through the LAPD, had engaged in a pattern, practice, and custom of unlawful detention of individuals without probable cause of reasonable suspicion.

68. Plaintiff is informed and believes, and thereon alleges, that in the weeks and months preceding the incident, LAPD officers were repeatedly present at Federal immigration enforcement operations throughout Los Angeles and routinely provided crowd control, perimeter security, traffic control, scene management, and other operational support that facilitated federal immigration arrests and detentions. These activities occurred in publicly visible locations,

including commercial corridors, public streets, and areas of downtown Los Angeles, and were known to LAPD supervisors and command staff.

69. Plaintiff is further informed and believes, and thereon alleges, that these incidents generated repeated complaints from community members, immigrant-rights organizations, legal observers, and members of the public, who reported that LAPD officers were assisting federal immigration enforcement in a manner inconsistent with CITY policy and local law – specifically that the LAPD was unconstitutionally detaining individuals without any legal basis for doing so. These concerns were communicated directly to CITY policymakers, LAPD leadership, and the Los Angeles Board of Police Commissioners through public comment, community meetings, complaints, correspondence, and other channels.

70. Through these complaints, reports, and public scrutiny, the CITY had actual and constructive notice that LAPD officers were participating in, facilitating, and lending authority to federal immigration enforcement operations and that such conduct created a substantial risk of unlawful detentions, unlawful seizures, violations of constitutional rights, and harm to residents, including United States citizens.

71. Despite this notice, the CITY, acting through its policymakers, including the Chief of Police, command staff, and the Board of Police Commissioners, failed to adequately investigate, supervise, discipline, retrain, or otherwise curb the practice. Instead, the CITY ratified, condoned, acquiesced in, and was deliberately indifferent to the ongoing practice of LAPD officers assisting federal immigration enforcement operations. This longstanding custom, practice, and failure to supervise and train was a moving force behind the constitutional violations suffered by Plaintiff and directly caused the injuries alleged herein.

72. Upon information and belief, the CITY maintained an unofficial but widespread and well-settled policy, practice, or custom of permitting, condoning, and ratifying LAPD officers' violation of constitutional rights through the unlawful detention and arrests of individuals without probable cause or reasonable suspicion of any crime. The CITY's Chief of Police, Commanders, and supervisors knew of, and ratified this practice.

73. CITY failed to supervise LAPD officers and supervisors with respect to the

unlawful detentions and arrest of individuals without probable cause or reasonable suspicion.

74. Upon information and belief, the CITY maintained a policy, practice, or custom of tolerating and ratifying discriminatory enforcement directed at individuals based on their race, ethnicity, and/or perceived immigration status, including disparate application of law enforcement authority during immigration enforcement operations.

75. Each of the foregoing unconstitutional policies, practices, customs, and failures was a moving force behind the specific constitutional violations alleged herein, and each caused Plaintiff's injuries.

76. As a direct and proximate result of the CITY's unconstitutional policies, practices, customs, and failures to train, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

**Violation of Bane Act (Cal. Civil Code § 52.1)**

(By Plaintiff against all Defendants, the CITY and DOES 1-20)

77. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

78. California Civil Code section 52.1 (the "Bane Act") provides a cause of action against any person who interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

79. Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

80. The Bane Act, the California Constitution and California common law prohibit the false arrest and false imprisonment of individuals who have been detained without probable cause

or reasonable suspicion of having committed a crime. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. *See Bender v. Cnty. of L.A.,* 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act"). Defendant Does1-20 violated VELEZ's constitutional rights by unconstitutionally detaining her without any legal justification, whose acts of unreasonable detention were done intentionally, and with a reckless disregard for her constitutional rights. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-1045 (9th Cir. 2018).

81. Defendants, acting within the course and scope of their employment, acted intentionally and with a reckless disregard of Plaintiff's constitutional rights through threats, intimidation, and coercion, including but not limited to: issuing coercive commands to Plaintiff directing her to **"**stand there**"** and **"**turn around**"** using the authority and presence of uniformed law enforcement to compel Plaintiff's submission to ICE agents; actively participating in and facilitating the physical seizure of Plaintiff; and failing to investigate the kidnapping report, thereby ratifying and condoning the actions of the federal agents that they could proceed with the unlawful seizure without interference.

82. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable seizure, and the right to liberty, and the right to equal protection. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights. Their conduct was malicious, oppressive, and in conscious disregard of Plaintiff's rights.

83. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, and other damages. Plaintiff seeks compensatory damages, statutory damages, punitive damages against the individual Defendants, DOES 1-20, attorneys' fees, costs, and such other relief as the Court deems just and proper. Cal. Civil Code §§ 52, 52.1.

**SIXTH CLAIM FOR RELIEF**

**Violation of the Equal Protection Clause of the 14th Amendment**

84. The Equal Protection Clause in Section 1 of the Fourteenth Amendment of the

Constitution states that "no state shall deny to any person within its jurisdiction the equal protection of the laws." On June 24, 2025 Federal agents, C.G., Carey Crook, together with Defendants 1-20, Police Officers and Supervisors of the of CITY of Los Angeles, were working together in unison with Federal agents, in a Federal operation that was an unlawful, arbitrary, "round-up" of people based on racial profiling, and targeting dark-skinned Latino citizens of Los Angeles. Federal agents, C.G., and Carey Crook, and Defendants 1-20, Police Officers and Supervisors of the CITY of Los Angeles, were working together to deny Ms. VELEZ "the equal protection of the laws" because Ms. VELEZ fit the racial profile of a dark-skinned Latino citizen. The Federal operation was an unlawful, arbitrary, "round-up" of people based on racial profiling. The Federal agents used brutal excessive force against people, such as VELEZ. The unlawful Federal operation was aided by the City of Los Angeles Police Department, DOES 1-20, who helped the Federal agents brutalize and arrest people, such as VELEZ.

85. The Trump administration has zealously deported Latinos from the United States and has embarked in denying Equal Protection to Latinos in the U.S. In the year 2015 Donald Trump publicly stated that "Mexicans are criminals and rapists" This was the blue-print for DENYING Equal Protection for Latinos in the United States.

86. In this case, Defendant Does 1-20, LAPD officers acting under color of state law, took discriminatory action against Plaintiff VELEZ. She was a member of the Latino minority in this country and was discriminated against by Defendants, in collaboration with Federal immigration agents, due to her membership in the Latino minority. The Defendants' state action against her was because of immigration agents' intent to discriminate against the Latino minority in this country, in collaboration with federal immigration agents in order to effect unlawful detention and arrests of Latino minorities in this country.

87. Defendants cannot demonstrate that the discriminatory action taken against Plaintiff VELEZ is narrowly tailored to achieve a compelling government interest – in this case there is no compelling interest in "rounding-up" Latino minority individuals without a warrant, reasonable suspicion, or probable cause merely because of their race. Defendants violated the Equal Protection guaranteed by the 14th Amendment because they intended to discriminate

against Latinos like Plaintiff VELEZ, by aiding and abetting Federal immigration agents in the unlawful detention of Latino minority individuals without any legal justification.

**PRAYER FOR RELIEF**

88. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants, the CITY and DOES 1-20, as follows:

i. For compensatory damages, including damages for physical injury, emotional distress, loss of liberty, humiliation, and other general and special damages in an amount to be proven at trial;

ii. For statutory damages pursuant to California Civil Code sections 52 and 52.1, including statutory penalties for each violation;

iii. For treble damages pursuant to California Civil Code section 52 for Ralph Act and Bane Act violations;

iv. For punitive damages against the individual LAPD officers and supervisor defendants (DOES 1–20) for their willful, wanton, malicious, and oppressive conduct, in amounts sufficient to punish Defendants and deter future similar conduct;

v. For reasonable attorneys' fees pursuant to California Civil Code section 52.1;

vi. For costs of suit incurred herein;

vii. For pre-judgment and post-judgment interest as allowed by law;

viii. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: June 30, 2026

CARRILLO LAW FIRM, LLP

By: ______________________
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: June 30, 2026

CARRILLO LAW FIRM, LLP

By: ______________________
Luis A. Carrillo, Esq.,
Attorney for Plaintiff